STATE of Minnesota, Respondent,

v.

Dorman Richard ARDEN, Jr.,
Appellant.

No. C5–87–2186.

Supreme Court of Minnesota.

May 13, 1988.

C. Paul Jones, State Public Defender, Cathryn Y. Middlebrook, Minneapolis, for appellant.

Hubert H. Humphrey, III, St. Paul, Gary Fridell, Stephen N. Betcher, Red Wing, for respondent.

AMDAHL, Chief Justice.

This appeal raises the issue of the extent to which a prison inmate, who was sentenced to a concurrent sentence pursuant to the Sentencing Guidelines for making terroristic threats in a letter written from prison to his former wife, is entitled to receive "jail credit" against the sentence for time spent in confinement in prison before being convicted and sentenced for the current offense. The court of appeals, in an unpublished decision, held that the defendant is entitled to credit from April 27, 1987, the original trial date, to the date of sentencing, August 14, 1987. *State v. Arden*, No. C5–87–2186, slip op. (Minn.App. March 22, 1988) [available on WESTLAW, 1988 WL 24867]. Relying on *State v. Dulski*, 363 N.W.2d 307 (Minn.1985), we hold that the defendant is entitled to credit beginning with January 14, 1987, the date of the issuance of the complaint and arrest warrant.

In 1984 defendant was convicted of attempted second-degree murder for stabbing his brother and was sentenced to 66.5 months in prison. While in prison defendant has twice been convicted of terroristic threats, once in 1986 and once in 1987, for mailing letters containing threats relating to his ex-wife and his brother. Defendant received the presumptive sentence for both offenses, 21 months concurrent for the 1986 offense (based on a criminal history score of 3) and 25 months concurrent for the 1987 offense (based on a criminal history score of 4). The credit issue which we decide in this appeal arises in connection with the second of these two terroristic threats convictions.

Defendant's ex-wife received the letter in question on January 7, 1987, and defendant was formally charged and an arrest warrant was issued on January 14, 1987. The case was originally set for trial on April 27, 1987, but, because of a continuance re-

quested by the prosecution, trial was not held until later. The prosecutor and defense counsel agreed at the time of the continuance that defendant would receive jail credit "from April 27, 1987 to sentencing in addition to any other jail credit he is entitled to receive from arrest to April 27, 1987." We of course do not decide the hypothetical question whether there were grounds for a durational departure or a departure with respect to consecutive sentence. Suffice it to say, the trial court imposed the presumptive sentence of 25 months concurrent and awarded defendant credit only from April 27. Defendant argues that, given the imposition of a concurrent sentence pursuant to the Sentencing Guidelines, he is entitled to credit from January 14, the date of the complaint and arrest warrant. We agree.

The leading case dealing with jail credit against concurrent sentences where the State of Minnesota is a party to both of the criminal charges is *State v. Dulski*, 363 N.W.2d 307 (Minn.1985), a case which dealt with the issue in a slightly different context from that of this case. Under *Dulski*, in a case dealing with jail credit against concurrent Guidelines sentences when the State of Minnesota is a party to both criminal charges the court should (a) ensure that withholding of jail credit does not result in a *de facto* departure resulting in consecutive service and (b) ensure that the total length of sentence the defendant receives does not turn on things that are subject to manipulation by the prosecutor or things that are irrelevant such as whether the defendant pleads guilty or insists on his right to a trial. 363 N.W.2d at 309–10.

The court of appeals has applied *Dulski* in cases similar to this one. For example, in *State v. Zaycheck*, 386 N.W.2d 294 (Minn.App.1986), the defendant was in prison for another offense when he was charged with two new offenses in Ramsey County. Ramsey County did not place any "hold" on him but did file a complaint. Several months later Zaycheck pleaded guilty and was sentenced to a concurrent Sentencing Guidelines sentence. Relying on *Dulski*, the court of appeals held that Zaycheck was entitled to credit against the current sentence for time spent in prison from the date of the filing of the complaint, not from the date of the current conviction or sentence. It based this on the fact that any other result would mean that there was a *de facto* departure resulting in partial consecutive service and would mean that the amount of credit depended on irrelevant factors mentioned in *Dulski*. *Id.* at 296; *see also State v. C.J.M.*, 409 N.W.2d 857, 861 (Minn.App.1987), *pet. for rev. denied* (Minn.1987), where the court of appeals relied on *Zaycheck*.

The court of appeals in this case distinguished *Zaycheck* and *C.J.M.* by saying that the defendant in this case committed the current offense while in prison, whereas the defendant in those cases committed the offense before going to prison but was not charged until after he was in prison. Logically, we do not believe that this distinction should make for a different result as far as the credit issue is concerned.[1] When a trial court imposes a concurrent sentence under the Sentencing Guidelines in a case such as this the court in its decision as to the amount of credit should avoid doing anything which would constitute a *de facto* departure as to consecutive service or anything which would make the determination of credit turn on whether the defendant pleaded guilty or insisted on his right to trial or on whether the prosecutor delayed matters. Under the approach taken by the trial court and the court of appeals in this case, if the defendant had pleaded guilty immediately after being charged he would have received more credit and would be entitled to earlier release. Under *Dulski*, the amount of credit one receives should not turn on such an irrelevant factor.

In summary, we hold that defendant is entitled to credit from January 14, 1987,

1. Of course, if the Sentencing Guidelines Commission so decided, this distinction logically could bear on the decision whether the sentence should run consecutively. *Cf.*, Minnesota Sentencing Guidelines and Commentary II.F.3. (1987) (allowing permissive consecutive sentencing when the conviction is for escape from lawful custody).

not just from April 27, 1987, to the date of sentencing.

Affirmed as modified.